UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
BENJAMIN LEVIN, :
:
       Plaintiff, :
: **DEFENDANT'S ANSWER TO**
  v. : **COMPLAINT AND**
: **COUNTERCLAIMS**
WELLS FARGO BANK, N.A., :
: Case No. 1:23-cv-02517
       Defendant. :
:
---------------------------------------------------------------X

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by its attorneys Fisher & Phillips, LLP, as and for its answer to the Complaint filed by Benjamin Levin ("Levin") on or about March 24, 2023 ("Complaint"), respectfully state as follows:

## AS TO "INTRODUCTION"

1. Defendant denies the allegations set forth in paragraph "1" of the Complaint, except admits Defendant offered Plaintiff a retention agreement ("Retention Agreement") and refers the Court to the agreement referred to therein for complete and accurate statements of its contents.

2. Defendant denies the allegations set forth in paragraph "2" of the Complaint, except admits Plaintiff was employed by Wells Fargo from February 2021 through January 31, 2022 and received an "exceeds" performance rating.

3. Defendant denies the allegations set forth in paragraph "3" of the Complaint, except admits Defendant made the determination that Plaintiff should receive a formal warning for improper conduct related to the valuation of a customer's property and Plaintiff's failure to enter required information related to the transaction into CORE, the Wells Fargo system of record.

4. Defendant denies the allegations set forth in paragraph "4" of the Complaint.

5. Defendant denies the allegations set forth in paragraph "5" of the Complaint, except admits that Plaintiff purports to proceed as set forth therein.

## AS TO "JURISDICTION AND VENUE"

6. Defendant denies the allegations set forth in paragraph "6" of the Complaint, except admits that Plaintiff purports to proceed as set forth therein and refers the Court to the statutory authority referred to therein for complete and accurate statements of their contents.

7. The allegations set forth in paragraph "7" of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, Defendant states that jurisdiction is proper.

8. The allegations set forth in paragraph "8" of the Complaint constitute conclusions of law to which no response is required. To the extent a response is required, Defendant states that venue is proper.

## AS TO "PARTIES"

9. Defendant admits the allegations set forth in paragraph "9" of the Complaint.

10. Defendant admits the allegations set forth in paragraph "10" of the Complaint.

## AS TO "FACTS"

11. Defendant denies the allegations set forth in paragraph "11" of the Complaint.

12. Defendant admits the allegations set forth in paragraph "12" of the Complaint.

13. Defendant denies the allegations set forth in paragraph "13" of the Complaint, except admits Plaintiff was employed as a Private Mortgage Banking Associate Manager in Defendant's Consumer Lending/Wells Fargo Home Lending division and that he was responsible for servicing Defendant's consumer and home lending customers and supervising other employees.

14. Defendant admits the allegations set forth in paragraph "14" of the Complaint.

15. Defendant denies the allegations set forth in paragraph "15" of the Complaint.

16. Defendant denies the allegations set forth in paragraph "16" of the Complaint, admits Defendant offered Plaintiff a Retention Agreement dated February 26, 2021, and refers the Court to the Retention Agreement referred to therein for complete and accurate statements of its contents.

17. Defendant denies the allegations set forth in paragraph "17" of the Complaint, except admits the Retention Agreement provided for a two-part retention bonus ("Retention Bonus") structure and refers the Court to the agreement referred to therein for complete and accurate statements of its contents.

18. Defendant denies the allegations set forth in paragraph "18" of the Complaint except to refer to the Retention Agreement referred to therein for complete statements of its contents.

19. Defendant denies the allegations set forth in paragraph "19" of the Complaint except to refer to the Retention Agreement referred to therein for complete statements of its contents.

20. Defendant denies the allegations set forth in paragraph "20" of the Complaint except to refer to the Retention Agreement referred to therein for complete statements of its contents.

21. Defendant denies the allegations set forth in paragraph "21" of the Complaint except to refer to the Retention Agreement referred to therein for complete statements of its contents.

22. Defendant denies the allegations set forth in paragraph "22" of the Complaint except to refer to the Retention Agreement referred to therein for complete statements of its contents.

23. Defendant admits the allegations set forth in paragraph "23" of the Complaint except to refer to the Retention Agreement referred to therein for complete statements of its contents.

24. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "24" of the Complaint, except admits Plaintiff purports that he accepted and executed the Retention Agreement on February 27, 2021.

25. Defendant denies the allegations set forth in paragraph "25" of the Complaint.

26. Defendant admits the allegations set forth in paragraph "26" of the Complaint.

27. Defendant denies the allegations set forth in paragraph "27" of the Complaint, except admits Plaintiff received certain credits in accordance with the terms of the Retention Agreement in February 2021 through January 2022.

28. Defendant denies the allegations set forth in paragraph "28" of the Complaint, except admits Plaintiff was given his 2021 performance evaluation and received an overall rating of "exceeds."

29. Defendant denies the allegations set forth in paragraph "29" of the Complaint as stated.

30. Defendant denies the allegations set forth in paragraph "30" of the Complaint.

31. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "31" of the Complaint and therefore denies said allegations.

32. Defendant denies the allegations set forth in paragraph "32" of the Complaint, except admits James Easton sent Plaintiff a text on March 12, 2022 related to the April 2021 mortgage application for one of Plaintiff's clients.

33. Defendant denies the allegations set forth in paragraph "33" of the Complaint, except admits that for a period of time during the COVID-19 pandemic appraisers were not allowed to enter certain homes and that appraisal waivers up to a certain valuation may have been available based on information customers included in their mortgage application.

34. Defendant denies the allegations set forth in paragraph "34" of the Complaint, except admits Plaintiff was responsible for reviewing the applications.

35. Defendant denies the allegations set forth in paragraph "35" of the Complaint, except admits Plaintiff was required to enter loan or communication notes in Defendant's system explaining the change in valuation of a customer's property.

36. Defendant denies the allegations set forth in paragraph "36" of the Complaint, except admits Defendant made adjustments to programs related to the appraisal waivers.

37. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "37" of the Complaint and therefore denies said allegations.

38. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "38" of the Complaint and therefore denies said allegations, except admits Plaintiff did not enter a "loan note" for the change in valuation of the customer's property.

39. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "39" of the Complaint and therefore denies said allegations, except admits Plaintiff was contacted by an internal investigator who discussed the appraisal

waiver policy with Plaintiff and asked about the property valuation for the at issue appraisal waiver.

40. Defendant denies the allegations set forth in paragraph "40" of the Complaint as stated, except admits Easton sent Plaintiff a text on March 12, 2022.

41. Defendant denies the allegations set forth in paragraph "41" of the Complaint, except admits Plaintiff spoke with Robert Schroeder about the circumstances of the investigation of the April 2021 mortgage application for one of Plaintiff's clients.

42. Defendant denies the allegations set forth in paragraph "42" of the Complaint, except admits Eric Gotsch spoke with Plaintiff about the results of the investigation of the April 2021 mortgage application for one of Plaintiff's clients.

43. Defendant denies the allegations set forth in paragraph "43" of the Complaint as stated.

44. Defendant denies the allegations set forth in paragraph "44" of the Complaint.

45. Defendant denies the allegations set forth in paragraph "45" of the Complaint.

**AS TO FIRST CLAIM FOR RELIEF**
(Breach of Contract – New York Law)

46. In response to the allegations set forth in paragraph "46" of the of the Complaint, Defendant repeats and re-alleges the responses set forth in paragraphs "1" through "45" of this Answer.

47. Defendant denies the allegations set forth in paragraph "47" of the Complaint, except admits the Retention Agreement is dated February 26, 2021 and Plaintiff purports to have signed the agreement on February 27, 2021.

48. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "48" of the Complaint, and therefore denies the same.

49. Defendant denies the allegations set forth in paragraph "49" of the Complaint.

50. Defendant denies the allegations set forth in paragraph "50" of the Complaint.

51. Defendant denies the allegations set forth in paragraph "51" of the Complaint.

52. Defendant denies the allegations set forth in paragraph "52" of the Complaint.

**AS TO SECOND CLAIM FOR RELIEF**
(Breach of Contract Caused by Wells Fargo' Breach of the Implied Covenant of Good Faith & Fair Dealing – New York Law)

53. In response to the allegations set forth in paragraph "53" of the of the Complaint, Defendant repeats and re-alleges the responses set forth in paragraphs "1" through "52" of this Answer.

54. The allegations set forth in paragraph "54" of the Complaint constitute conclusions of law to which no response is required.

55. Defendant denies the allegations set forth in paragraph "55" of the Complaint.

56. Defendant denies the allegations set forth in paragraph "56" of the Complaint.

57. Defendant denies the allegations set forth in paragraph "57" of the Complaint.

58. Defendant denies the allegations set forth in paragraph "58" of the Complaint.

59. Defendant denies the allegations set forth in paragraph "59" of the Complaint.

**AS TO THIRD CLAIM FOR RELIEF**
(Failure to Pay Earned Wages
N.Y. Lab. Law §§ 193, 198)

60. In response to the allegations set forth in paragraph "60" of the of the Complaint, Defendant repeats and re-alleges the responses set forth in paragraphs "1" through "59" of this Answer.

61. Defendant denies the allegations set forth in paragraph "61" of the Complaint.

62. Defendant denies the allegations set forth in paragraph "62" of the Complaint.

## AS TO PRAYER FOR RELIEF

Defendant denies Plaintiff's prayer for relief, including all of the subparts thereto, and respectfully requests that the Complaint be dismissed in its entirety and with prejudice and that Defendant be awarded attorney's fees and costs and any further relief deemed appropriate by the Court.

## AS TO JURY DEMAND

Defendant denies that Plaintiff is entitled to a trial by jury as to all matters alleged in the Complaint.

## GENERAL DENIAL

Defendant denies each and every allegation in the Complaint not specifically admitted herein.

## SEPARATE AND AFFIRMATIVE DEFENSES

Defendant asserts the following separate defenses, without assuming the burden of proof on any defense except as required by applicable law.

## FIRST SEPARATE DEFENSE

The Complaint fails to state a claim against Defendant upon which relief may be granted.

## SECOND SEPARATE DEFENSE

Plaintiff did not adequately perform his promised obligations in accordance with the terms of his agreement with Defendant to state a breach of contract claim.

## THIRD SEPARATE DEFENSE

Defendant denies the existence of any duty, statutory, equitable, contractual or otherwise, to Plaintiff; in any event, Defendant denies violating any duty owed to the Plaintiff if any duty is found to have existed.

## FOURTH SEPARATE DEFENSE

Plaintiff's breach of the covenant of good faith and fair dealing claim is duplicative to his breach of contract claim.

## FIFTH SEPARATE DEFENSE

Defendant did not seek to prevent performance of the contract or to withhold its benefits from Plaintiff.

## SIXTH SEPARATE DEFENSE

No implied covenant of good faith and fair dealing may be implied that would be inconsistent with the other terms of the contractual relationship.

## SEVENTH SEPARATE DEFENSE

Defendant did not fail to pay Plaintiff his earned wages.

## EIGHTH SEPARATE DEFENSE

Actions taken by Defendant with respect to Plaintiff were taken in good faith and within reasonable grounds to believe such conduct comported with the New York Labor Law.

## NINTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of laches, waiver, unclean hands and/or estoppel.

## TENTH SEPARATE DEFENSE

Nothing Defendant communicated, did, or omitted to communicate or do caused, resulted in, contributed to, or were a substantial factor in any detriment, injury, or damages to Plaintiff.

## ELEVENTH SEPARATE DEFENSE

To the extent Plaintiff has suffered any damages or injuries, which Defendant denies, such damages or injuries were not caused by Defendant's action or conduct.

FP 47477471.1

**TWELFTH SEPARATE DEFENSE**

Liquidated damages are not warranted, because Defendant did not act or fail to act in a manner sufficient to give rise to liquidated damages liability.

**THIRTEENTH SEPARATE DEFENSE**

Subject to proof of discovery, the damage claims in the Complaint may be barred, in whole or in part, by Plaintiff's failure to mitigate damages.

**FOURTEENTH SEPARATE DEFENSE**

Plaintiff's alleged damages, if any, may have been caused by, or are attributable to, his own acts or omissions, or the acts or omissions of persons or entities over which Defendant did not have control.

**FIFTEENTH SEPARATE DEFENSE**

Plaintiff would be unjustly enriched by any recovery.

**SIXTEENTH SEPARATE DEFENSE**

Plaintiff has failed to state a proper claim for attorneys' fees.

**SEVENTEENTH SEPARATE DEFENSE**

Plaintiff is not entitled to the relief sought in the Complaint to the extent the requested relief is not available under applicable statutes, regulations, ordinances, executive orders, or other relevant provisions of law.

**RESERVATION OF RIGHTS**

Defendant reserves its right to amend its answer and to assert any additional separate, affirmative and/or other defenses that may become available or apparent during the course of the investigation and/or discovery in this case.

**WHEREFORE**, Defendant respectfully requests that the Complaint be dismissed in its entirety and with prejudice, and that Defendant be awarded its attorneys' fees and costs and any further relief deemed appropriate by the Court.

## COUNTERCLAIMS

1. Wells Fargo Bank, N.A. ("Wells Fargo") submits the following Counterclaims against Benjamin Levin ("Levin").

## THE PARTIES

2. Wells Fargo is a national banking association and a federally chartered bank. As such, it is a citizen of the state in which its main office is located, as set forth in its Articles of Association. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006). The main office of Wells Fargo Bank, N.A., is located in Sioux Falls, South Dakota. Wells Fargo Bank is accordingly a citizen of the State of South Dakota.

3. Levin is former employee of Wells Fargo and, upon information and belief, a citizen and resident of the State of New York.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, upon information and belief, Plaintiff is a citizen and resident of the State of New York, Defendant is a citizen of the State of South Dakota, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) (2) because a substantial part of the events giving rise to Wells Fargo's claims occurred in this District.

**FACTUAL ALLEGATIONS**

6. Levin was employed by Wells Fargo as a Private Mortgage Banking Associate Manager in the Consumer Lending/Home Lending division.

7. As a Private Mortgage Banking Associate Manager, Levin's job responsibilities included producing high quality loans that met Wells Fargo's home mortgage guidelines and coaching, directing, and managing his team.

8. On or about March 26, 2020, Wells Fargo's Home Lending division suspended almost all interior appraisal inspections in response to the COVID-19 pandemic. Excluded from this suspension were certain Government Sponsored Enterprise (GSE) refinances which could not be processed without an appraisal waiver. To qualify for an appraisal waiver, the estimated home value entered in Wells Fargo's Common Opportunities Results and Experience (CORE) system could not exceed one million dollars.

9. During the loan application process, home mortgage consultants, which included Levin, review the customer's application and run Wells Fargo's risk engine to assess eligibility for a GSE appraisal waiver ("decision run").

10. Where GSE appraisal waivers are offered by a lender, the Federal National Mortgage Association (Fanny Mae) or the Federal Home Loan Mortgage Corporation (Freddie Mac) accept the value estimate submitted by the lender as the market value for the subject property.

11. Home mortgage consultants were prohibited from guiding or coaching a customer toward a certain valuation, manipulating the customer's determination of estimated property value in order to get an GSE appraisal alternative, or entering false or inaccurate information into CORE for any reason. Where the customer modified the property value estimate after an initial decision

run for any reason, the home mortgage consultant was required to enter a loan note in CORE explaining the reason for the change.

12.     Throughout 2020 and 2021, Wells Fargo issued several communications, provided guidance, and conducted trainings about its GSE appraisal waiver policy. Plaintiff received these communications, guidance, and training about the GSE appraisal waiver policy.

13.     On or about February 27, 2021, Levin executed a retention agreement with Wells Fargo (the "Retention Agreement"). In exchange for the Retention Bonus payments detailed in the Retention Agreement, Levin agreed to, among other things:

- Continue working for Wells Fargo in his then-current role from February 26, 2021 through January 31, 2022.

- Devote his working time to executing his duties at an acceptable performance level as determined by Wells Fargo, with an emphasis on partnership and strong risk management.

- Meet certain performance standards through January 31, 2022, including demonstrating effective partnership and risk management of his Mortgage Consultant Activities and maintaining a performance rating of at least "meets expectations" with no corrective action. Levin could not be on a formal warning or final notice at any time.

- Abide by Wells Fargo's employment policies, including its Code of Ethics and Business Conduct ("Code of Ethics"). Violation of Wells Fargo's Code of Ethics or other employment policies would render Levin ineligible for a Retention Bonus payment.

14.     In exchange for his execution of the Retention Agreement and compliance with its conditions, Wells Fargo agreed to pay Levin (1) additional basis points on his monthly funded loan volume for the months of February 2021 through January 2022 and (2) a one-time payment payable on the last pay date in March 2022 or as soon as administratively feasible thereafter.

15. On April 11, 2021, a customer of Levin's submitted an application for a mortgage refinance loan of the customer's primary residence ("April Loan"). Levin had originated the original loan purchase for the customer in 2018. On the same day, April 11, 2021, after two decision runs, Levin processed the April Loan application with an appraisal waiver.

16. On or about October 19, 2021, as a part of Wells Fargo's large-scale investigation of GSE appraisal waivers, Wells Fargo's Enterprise Investigations division was notified of an allegation that Levin falsified the estimated property value of a customer's property to obtain an appraisal waiver for the April Loan in violation of Wells Fargo's GSE appraisal waiver policy.

17. The investigation by Enterprise Investigations of the April Loan revealed that the customer's initial online application, submitted on or about April 11, 2021, for the April Loan reflected an estimated property value of $1.1 million. However, the decision runs initiated by Levin used an estimated property value below the $1.1 million valuation initially provided by the customer.

18. The first decision run by Levin used an estimated property value of $955,000 and required a full appraisal.

19. The second decision run also used an estimated property value of $955,000, but became eligible for an appraisal waiver. System data history showed that prior to the second decision run, Levin lowered the estimated value of the property for the April Loan from the customer's original estimated valuation of $1.1 million to $999,000 and then again to $955,000, the property's appraised value in 2018.

20. Levin did not enter any loan or communication notes in CORE or elsewhere to explain the adjusted value from the customer's original estimate.

21. Estimates from online valuation sites valued the April Loan property at $1.18 to $1.4 million.

22. On or about November 29, 2021, Levin was interviewed as a part of Enterprise Investigations' investigation of the appraisal waiver for the April Loan. During his interview, Levin displayed thorough knowledge of Wells Fargo's appraisal waiver policy and remembered the April Loan customer. However, Levin could not recall the conversation he had with the customer about the valuation. Following the interview, Levin sent an email to the investigator explaining that he recalled the customer verbally asking him to change the property's value to $955,000, the previous valuation.

23. Enterprise Investigations substantiated the allegation of falsification, determining that it was more likely than not that Levin intentionally manipulated the estimated property value in order to obtain an appraisal waiver. In doing so, Levin violated Wells Fargo's policy that home mortgage consultants are not to guide the customer toward a certain valuation or manipulate the customer's determination of estimated property value in order to get an appraisal alternative.

24. In or about January 2022, Wells Fargo's Employee Relations recommended corrective action against Levin consisting of a Final Notice.

25. On or about February 15, 2022, Wells Fargo's Employee Relation's Second Level Review Team revised the corrective action to a Formal Warning.

26. On or about February 28, 2022, Wells Fargo's Employee Relations conveyed its corrective action recommendation to line of business leadership.

27. On or about April 4, 2022, Levin resigned from his employment before he was notified of the results of the investigation of the April Loan or received Wells Fargo's final corrective action determination.

28.     On or about April 5, 2022, Robert Schroeder was notified that following review by Senior Leadership in Wells Fargo's Home Lending division, the recommended Formal Warning corrective action against Levin was upheld.

## COUNT I: BREACH OF CONTRACT

29.     Wells Fargo repeats and re-alleges the allegations set forth in paragraphs "1" through "28" as if fully set forth herein.

30.     On or about February 27, 2021, Levin executed the Retention Agreement with Wells Fargo, pursuant to which Levin agreed to execute his duties at an acceptable performance level as determined by Wells Fargo management and comply with Wells Fargo's Code of Ethics. Levin further agreed that violation of Wells Fargo's Code of Ethics would render him ineligible for a Retention Bonus payment, payment of the Retention Bonus was subject to the conditions and restrictions imposed under Wells Fargo's policy, and Wells Fargo may recover compensation received by Levin.

31.     In accordance with the terms of the Retention Agreement, Wells Fargo made payments to Levin in the months of February 2021 through January 2022.

32.     Levin, however, violated his obligations under the Retention Agreement when, on or about April 11, 2021, he manipulated the estimated property value of a customer's property to get a GSE appraisal waiver.

33.     Levin's actions violated Wells Fargo's Code of Ethics and constituted a material breach of the Retention Agreement.

34.     As a direct and proximate result Levin's breach of the Retention Agreement, Wells Fargo suffered damages in excess of One Hundred Thousand Dollars in the form of paying Levin

monthly Retention Bonus payments that he did not earn under the terms of the Retention Agreement.

35. Wells Fargo seeks to recover compensation paid to Levin, plus interest, for his breach of the Retention Agreement, as well as other review that the Court deems just and appropriate.

**WHEREFORE**, Wells Fargo demands relief against Levin awarding compensatory, and consequential damages, including but not limited to repayment of all monthly retention bonus payments paid pursuant to the Retention Agreement in favor of Wells Fargo and against Levin in an amount to be determined at trial, together with interest thereon and attorneys' fees and costs and such other and further relief as this Court may deem just and equitable.

Dated: New York, New York
June 16, 2023

Respectfully submitted,

*/s/ Kathleen M. Caminiti*
Kathleen McLeod Caminiti, Esq.

**FISHER & PHILLIPS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Phone: (212) 899-9982
E-Mail: kcaminiti@fisherphillips.com
*Attorneys Wells Fargo Bank, N.A.*

CC: Joseph & Kirschenbaum LLP
Lucas Colin Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 688-2548
lucas@jk-llp.com
*Attorneys for Plaintiff*

## CERTIFICATION OF SERVICE

I hereby certify that I caused to be served on this date a true and accurate copy of the foregoing Answer by electronic case filing and email upon:

Attn.: Lucas Colin Buzzard
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, NY 10004
lucas@jk-llp.com

Dated: June 16, 2023

By: *Kath M. Caminiti*
Kathleen McLeod Caminiti, Esq.

FP 47477471.1